# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | )   **Chapter 13** |
| **JEFREY L. CHRISTIANSEN,** | ) |
| | )   **Bankruptcy No. 15-00156** |
| Debtor. | ) |

### ORDER RE: MOTION FOR RELIEF FROM STAY, MOTION TO COMPEL ABANDONMENT OF PROPERTY, AND APPLICATION TO CONFIRM AND APPROVE SALES

Creditor First Citizens National Bank ("Bank") filed a group of motions seeking to validate a real estate sale that occurred just days after Debtor's bankruptcy filing. The Bank argues the Court should find the sale was valid and effective. Debtor disagrees, arguing that the sale violated the automatic stay. The Court held a telephonic hearing on the matter on May 29, 2015. Travis M. Armbrust appeared for the Bank. Kevin Ahrenholz appeared for Debtor. Carol Dunbar appeared for herself as the Chapter 13 Trustee. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

The Bank filed a Motion for Relief from Stay, a Motion to Compel Abandonment of Property, and an Application to Confirm and Approve Sales. The Bank argues that the sales should be validated because the parties involved were not given formal notice of the bankruptcy filing until after the sale. The Bank

argues that, at most, the Debtor only had an equitable interest in the property at the time it was sold. It further argues that allowing the Debtor to keep the property in the bankruptcy estate would be burdensome and costly.

The Debtor opposes all of the Bank's motions. The Debtor argues that the property was sold in violation of the automatic stay. Debtor's proposed plan seeks to cure the debts on the Bank's secured claims and pay all his creditors in full. The Court concludes that because the Debtor had at least an equitable right of redemption at the time of filing, Debtor should have an opportunity to cure the debt in his Chapter 13 Plan. The Court denies all of the Bank's related motions.

## FINDINGS OF FACT

Debtor filed his bankruptcy petition on February 17, 2015. Debtor listed the Bank as a secured creditor on his Schedule D. The Bank held a secured interest in two pieces of real estate that Debtor owned in Cerro Gordo County, Iowa. The outstanding obligation for both of the properties includes $60,673.31 in debt, $1,667.75 in attorney fees, and $327.20 in sheriff costs. Debtor listed the debt as $62,341.06 on Schedule D.

On February 17, 2015, when Debtor filed, the Bank had already foreclosed upon the mortgage. In the Cerro Gordo County order, the court noted that there would be no rights to redemption after the Sheriff's sale. Case No. EQCV068719. The court also noted that Debtor and other parties in possession of the land were

2

served with notice, but no one filed an Answer or any responsive pleading. Debtor did not appear at the judicial foreclosure proceeding.

A Sheriff's sale was scheduled and held on February 19, 2015 in Cerro Gordo County, Iowa—two days after the bankruptcy filing. The sale went forward. The two parcels were sold to two separate buyers. The first parcel sold to Randy Gene Miller for $39,850.00. The second parcel also sold for $12,001.00 to Jeffrey M. Tierney and Jessica L. Tierney. The Cerro Gordo County Sheriff issued a Certificate of Purchase and a Sheriff's Deed for both of those properties after receiving payment. One of the properties appears to be the Debtor's homestead. He was still residing there as of March 2015.

Debtor notified the Bank and Bank's counsel that he filed bankruptcy before the sale. Debtor left messages for both of them on the day he filed bankruptcy. He tried to contact them again on the morning of the sale. The Bank confirmed to the Debtor that it received the message before the sale. The Clerk of Court did not mail formal notice to the Bank until February 19, 2015.

## CONCLUSIONS OF LAW

The Bank would like the Court to validate the sales through a retroactive lifting of the automatic stay accompanied by an order approving the sale. In the alternative, the Bank asks that the property be abandoned because it is "inconsequential and burdensome to the estate as the estate could not have

3

exercised its right of redemption." Debtor argues that because the sale was conducted in violation of the automatic stay, it is void. Debtor both wants and needs the property to move forward with his Chapter 13 plan.

Property of the estate includes all of a debtor's interests in property, including all legal and equitable interests. 11 U.S.C. § 541 (2014). "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." Barnhill v. Johnson, 503 U.S. 393, 398 (1992). Therefore, the Court must look to Iowa law to determine the type of property interest that the Debtor had at the time of his bankruptcy filing.

## I.  Debtor Had an Equitable Right of Redemption at the Time he Filed the Bankruptcy Petition.

At the time Debtor filed bankruptcy, the foreclosure sale had not yet occurred. The Iowa District Court for Cerro Gordo County had already entered an order, which foreclosed the property and issued a Special Execution for the sale of the property. The foreclosure sale was set but not completed until after the Debtor filed his bankruptcy petition.

The foreclosure order stated that the Sheriff's Deed would issue immediately at the sale and that the property would be available for immediate possession after the sale because the Bank invoked Iowa Code 654.20. Iowa Code 654.20 allows a creditor to foreclose without the possibility of the statutory right of redemption after the Sheriff's sale. The Debtor filed no Demand for Delay of Sale. Iowa Code

4

§§ 654.21–.22. The Iowa Code specifically states what rights a debtor has between the foreclosure and the sale: "At any time after judgment and before the sale, the mortgagor may pay the plaintiff the amount of the judgment and, if paid, the judgment shall be satisfied of record and the sale shall not be held." Iowa Code § 654.21. This is commonly known as an equity of redemption or an equitable right of redemption. See Iowa Code § 654.5 (explaining Iowa's redemption rights on real estate). See generally Patrick B. Bauer, Statutory Redemption Reconsidered: The Operation of Iowa's Redemption Statute in Two Counties Between 1881 and 1980, 70 Iowa L. Rev. 343 (1985). Iowa Law also allows for a one-year, post-sale right of redemption unless the foreclosing creditor has elected to waive the right to a deficiency judgment. Iowa Code § 654.5.

Debtor had no right of statutory redemption (one-year following sale) because the Bank waived deficiency. Iowa Code §§ 628.3, 654.20, & .26. The only question remaining is whether Debtor had an equity of redemption. Here, the foreclosure had already occurred, but the sale had not. Under Iowa law, "[a] mortgage debtor has an **equity of redemption** until the foreclosure sale, and not afterwards. After the foreclosure sale, the mortgage debtor has the right of redemption if the statute so provides." Hawkeye Bank & Trust, N.A. of Centerville-Seymour v. Milburn, 437 N.W.2d 919, 921 (Iowa 1989) (emphasis added). Iowa Code 654.21 appears to codify the equitable right of redemption in

5

Iowa. The Iowa Supreme Court has stated:

> Both the equity of redemption and the statutory right of redemption are property of the estate under section 541 of the Bankruptcy Act. If a debtor files a bankruptcy petition after the foreclosure sale, the debtor's statutory right of redemption is property in the estate. . . .
>
> If a debtor files a bankruptcy petition before the foreclosure sale, the debtor's equity of redemption is property in the estate. The general tolling provisions of the Bankruptcy Act will preserve this property interest until the release of that property by the trustee.

Id. at 923. Iowa law establishes that Debtor had an equitable right of redemption at the time of the bankruptcy filing.

Iowa law has a provision that is directly affected by the automatic stay's implementation: Iowa Code 628.4. This provision reads, in its entirety, "[a] party who has stayed execution on the judgment is not entitled to redeem." The Iowa Supreme Court has determined that invoking the automatic stay under 11 U.S.C. § 362 is a stay for purposes of Iowa Code 628.4. First Nat'l Bank of Glidden v. Matt Bauer Farms Corp., 408 N.W.2d 51, 55 (Iowa 1987). However, this provision does not affect a Debtor's equitable right of redemption; it only affects his or her statutory right of redemption that arises after the foreclosure sale. Hawkeye Bank & Trust, 437 N.W.2d 919, 923.

## II.     The Sheriff's Sale Violated the Automatic Stay.

The next question the Court must consider is whether the sale violated the automatic stay as set out in 11 U.S.C. § 362. The Bank does not explicitly deny

that it violated the automatic stay. Instead it argues there was insufficient notice of the bankruptcy. Debtor argues that the Bank blatantly violated the automatic stay.

Section 362 of the Bankruptcy Code provides Debtors and creditors with extensive protection once the bankruptcy petition has been filed. It halts virtually all action regarding property of the estate, including: "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the bankruptcy case under this title." 11 U.S.C. § 362(a)(2).

It is a common axiom of bankruptcy law that the automatic stay applies immediately after the bankruptcy petition is filed, regardless of whether creditors have knowledge of the bankruptcy. See LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317 (B.A.P. 8th Cir. 1999); Consitution Bank v. Tubbs, 68 F.3d 685, 691 (3rd Cir. 1995). The stay applies regardless of formal service or notice to creditors. 9B Am. Jur. 2d Bankruptcy § 1725. ("The automatic stay is effective against the world, regardless of notice."); O'Connor v. Methodist Hosp. of Jonesboro, Inc. (In re O'Connor), 42 B.R. 390, 392 (Bankr. E.D. Ark. 1984) ("The stay arising from the bankruptcy petition is effective upon the date of filing regardless of whether there has been formal service or whether the creditor has received notice of the filing."). "Once a party receives reasonable, actual notice of a bankruptcy petition, that party has the responsibility to ensure that the stay is not violated." 9B Am. Jur. 2d Bankruptcy § 1725; see also In re Flack, 239 B.R. 155, 165 (Bankr. S.D.

7

Ohio 1999). Further, "[k]knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." 9B Am. Jur. 2d Bankruptcy § 1725; In re Freemyer Industrial Pressure, Inc., 381 B.R. 262, 267 (Bankr. N.D. Tex. 2002) ("Oral notice of a filing is sufficient to require a party to observe the stay.") (citing cases).

Here, the Debtor called the Bank and the Bank's counsel and left messages that he had filed for bankruptcy. The Debtor also specifically stated that the Bank acknowledged that it had received his message. However, the Bank went forward with the sale nonetheless. Regardless of whether the debtor provided immediate notice, the sale should not have continued. Debtor had an equitable right of redemption, which became property of the estate upon the filing of the bankruptcy petition. This Court would have reached the same conclusion even if the Debtor had not provided the Bank with actual notice.

**III.    The Court Will Not Grant Retroactive Approval of the Sales.**

Actions taken in violation of the automatic stay are *void ab initio*. LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317 (B.A.P. 8th Cir. 1999). The Court can grant retroactive relief from the stay, but this should be granted "only sparingly and in compelling circumstances." Id. at 325 (quoting Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 978 (1st Cir. 1997)). Although the Bank's pleadings are not specficially labeled as a request for retroactive relief, that appears

8

to be what it is requesting, so the Court will treat them as such.

Cases that have granted retroactive relief from the automatic stay are uncommon. While the reasons for this unusual relief vary, courts tend to examine the totality of the circumstances. See e.g., In re Donovan, 266 B.R. 862, 870–71 (Bankr. S.D. Iowa 2001) (discussing circumstances that may warrant retroactive relief, including the debtor's bad faith); Wilson v. Carter (In re Carter), 240 B.R. 767, 769–70 (Bankr. W.D. Mo. 1999) (granted where the debtor actively attempted to hide the bankruptcy from a creditor); In re Smith, 245 B.R. 622, 624–25 (Bankr. W.D. Mo. 2000) (denied where the property was necessary for reorganization and was the debtor's home, but the debtor did not hold any equity in the property). A number of factors are useful to consider when making this decision:

> (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; (7) if the creditor has detrimentally changed its position on the basis of the action taken; (8) whether the creditor took some affirmative action post-petition to bring about the violation of the stay; and (9) whether the creditor promptly seeks a retroactive lifting of the stay and approval for the action that has been taken.

In re Williams, 257 B.R. 297, 301 (Bankr. W.D. Mo. 2001).

After weighing those factors, the Court concludes that the totality of the circumstances do not favor retroactively lifting the automatic stay. Here, the

9

Debtor lives on one of the disputed properties. He stated that he attempted to notify the Bank of the bankruptcy filing prior to the foreclosure sale. There has been no showing of bad faith. Debtor stated that he has equity in the property and wishes to cure the debts related to the properties.

This case involves two other parties who purchased the properties at a foreclosure sale not explicitly related to the bankruptcy. While these third parties may be negatively affected, and the Bank filed for approval of the sales in the bankruptcy just a few days after the sales, this is not enough to provide retroactive relief. The fact remains that the Bank continued with the Sheriff's sale even though it had actual notice of the bankruptcy filing. This serious disregard for Debtor's rights cannot be approved or ignored. The Court concludes that there are not sufficient grounds to retroactively lift the automatic stay.

## IV. The Court Denies Bank's Motion to Compel Abandonment.

Bank argues that, even if the Debtor does have an equitable right in the properties and the automatic stay was violated, the real estate is burdensome to the estate. The Bank bases this argument partly on the fact that the properties received bids that were much lower than the debts on the property. The Bank requests that the Court compel abandonment of the property.

Debtor resists this motion as well. Debtor's bankruptcy plan that centers on these properties is a 100% payment plan, and Debtor believes he can cure.

Chapter 13 debtors have more extensive rights to cure within the bankruptcy context than they may under state law. See, e.g., 11 U.S.C. § 1322(b)(3), (5), (c)(1). As previously discussed, the Debtor had an equitable right of redemption at the time of the bankruptcy filing. Debtor stated that he has been working on fixing up the properties for a number of years. He explained that the property may not look like much to others, but he has put a lot of time and effort into the properties, one of which is his home.

The Court is not persuaded that the properties would be a burden to the estate. Debtor filed bankruptcy to save these properties. The estate is intricately tied to these properties and the debt involved with these properties. The Debtor seeks to cure the default in his Chapter 13 plan and make 100% payment to creditors. The Court concludes that he should be afforded this opportunity.

## CONCLUSION

The Debtor held an equitable right of redemption at the time the bankruptcy petition was filed. He provided actual notice to the Bank and Bank's counsel prior to the sale, but the sale continued nonetheless. The sale was conducted in violation of the automatic stay and is therefore *void ab initio*. The Debtor will be given the opportunity to create a plan that cures his defaults on the properties, and if there are problems with the plan, then they will be addressed at plan confirmation.

**WHEREFORE**, Bank's Motion for Relief from the Automatic Stay, and Retroactive Relief from the Automatic Stay are **DENIED.**

**WHEREFORE,** Bank's Application to Confirm and Approve Sales is **DENIED.** The sale proceeds will be returned to the buyers in full.

**WHEREFORE,** Bank's Motion to Compel Abandonment of Property is **DENIED.** The Debtor will have the opportunity to create a Chapter 13 plan that cures the defaults on the property involved in this case.

Dated and Entered:
   July 8, 2015

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE